FREDERICK J. GUSTAFSON ET UX. *vs.* CHARLES P. RUSTE-
MEYER.

First Judicial District, Hartford, Oct. Term, 1897. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A mere naked, false representation as to the value of real estate, made
by the vendor to his vendee, is not actionable unless the buyer has
been fraudulently induced to forbear inquiry as to its truth ; and
in that case the means by which he was induced to forbear inquiry
must be specifically pleaded.

An appellant's claims of error must be confined to those made in the
court below and assigned in his reasons of appeal.

In an action to recover damages for fraud in the sale or exchange of
property, real or personal, the measure of damages is the difference
between the actual value of the property at the time of the sale or
exchange, and what it would have been worth if it had been as rep-
resented.

False and fraudulent oral representations by a vendor of land, as to its
boundaries and dimensions, are admissible to show the fraud which
induced the buyer to accept a deed of the property, notwithstand-
ing the asserted acreage is therein described as "more or less."

Parties are entitled to know which of two conflicting rules for measur-
ing damages was adopted and applied by the trial court. But if
the application of either rule would have led to substantially the
same result, the error must be considered as harmless and not
ground for a new trial.

[Argued October 5th, 1897—decided January 5th, 1898.]

ACTION to recover damages for fraud in the exchange of
real estate, brought to the Superior Court in Hartford County
and tried to the court, *Elmer, J.;* facts found and judgment
rendered for the plaintiff Johanna Gustafson, and appeal by
the defendant for alleged errors in the rulings of the court.
*No error.*

The complaint alleged in substance that the defendant, who
owned a farm in Suffield which he knew in fact to contain
only seventy-eight acres of land, in order to induce one of the
plaintiffs, the wife of the other plaintiff, to purchase said farm
and a certain quantity of lumber, falsely and fraudulently
represented to the plaintiffs that the farm contained 186 acres
of land, and that he owned 10,000 feet of lumber, when he in

fact knew that said farm contained only 78 acres, and he only owned 1,000 feet of lumber; and that the wife relying upon the said representations was thereby deceived and induced to purchase said farm and lumber, and to give to the defendant in exchange therefor $500 and certain real estate on Julius street in Hartford, of the value of $1,750 above all incumbrances.

The answer was in effect a general denial, and with it was filed the following counterclaim: "1. In the transaction referred to in the complaint, plaintiffs represented to the defendant that the property on Julius street was worth $3,000 over and above incumbrances, and thereby induced the defendant to make, execute, and deliver to the plaintiffs a deed of the land in question. 2. The property on Julius street was of little if any value over and above the incumbrances, as the plaintiffs well knew at the time of the transaction, but defendant says that they made the representations fraudulently and falsely, and for the purpose of inducing the defendant to convey the said Suffield property, to his great loss and damage. 3. Relying upon the plaintiff's representations, the defendant made, executed and delivered [a deed of] his Suffield property referred to in the complaint, to his great loss and damage. Defendant claims by way of counterclaim $3,000 damages, and asks to recover the whole of said sum, or any part of the same over and above the amount, if any, that shall be allowed to the plaintiff in this action."

The following demurrer was filed to the counterclaim: "Plaintiffs demur to so much of the defendant's answer as is contained in the counterclaim, and for reasons of demurrer they assign the following, to wit: 1. The alleged false representations, as appears from the answer, are matters of information, judgment and estimation only, and are therefore not actionable. 2. It is not stated in the counterclaim that plaintiffs made any false representations of fact upon which the defendant had a right to rely. 3. It is not averred in said counterclaim that the plaintiffs made any false representations as to any facts, but only that they falsely stated the value of said real estate. 4. It does not appear from the counter-

claim that at the time said defendant received and accepted the deed of said real estate on Julius street, he was not fully informed as to the true value of said real estate, nor does it appear but that he was equally qualified with the plaintiffs to judge as to its true value." The court (*Hall J.*) sustained the demurrer.

The substance of the finding is as follows: On the 28th of September, 1894, the defendant being the owner of a certain farm in Suffield, Connecticut, conveyed it to the plaintiff, Johanna Gustafson, by warranty deed. As comprising said farm said deed described three separate parcels of land, one containing 6 acres, more or less, one containing 120 acres, more or less, and one containing 60 acres more or less, a total of 186 acres, more or less. The boundaries given in said deed were correct, but the first piece of land described in said deed as 6 acres more or less, contained only $5\frac{1}{4}$ acres; the second piece, described as containing 120 acres more or less, contained only $51\frac{3}{4}$ acres; and the third piece, described as containing 60 acres more or less, contained only $39\frac{1}{2}$ acres, a total of $96\frac{1}{2}$ acres. Prior to this conveyance the plaintiff, in company with the defendant, visited said farm, and, under the direction of the latter, passed across the three pieces. They did not go around them, the second and third pieces being irregular in shape and somewhat obstructed with undergrowth, bushes and trees. At this time, while upon this land, the defendant indicated to the plaintiffs different objects as being upon the boundary line of said tract, which proved to be beyond the boundary line; and at this time the defendant represented to the plaintiffs that said second piece of land contained 120 acres, and said third piece contained 60 acres. At the time of these representations, and at the time of said conveyance, the defendant knew that there were not 186 acres of land in said tract. He had, sometime prior to the representations aforesaid, caused said land to be measured by a surveyor, and had seen the report of the surveyor showing that there were less than 100 acres of land in said tract, and at this time was aware of the correct or approximate number of acres contained in the same.

Shortly before the conveyance of said land the defendant represented to the plaintiffs that he had purchased 10,000 feet of lumber with which to erect a tobacco shed on said land. At this time there was 1,000 feet of lumber on the land, and the defendant represented that the remaining 9,000 feet would be soon delivered, and that the possession and ownership of all of said lumber would be transferred to the plaintiff Johanna, when the conveyance of the land was made to her. In exchange for said tract of land conveyed by the defendant to the plaintiff Johanna, the latter paid the defendant $500 in money, and the plaintiffs also executed and delivered to the defendant a deed of certain real estate, consisting of a house and lot situated on Julius street in the city of Hartford, belonging to the plaintiff Johanna Gustafson, the value of which was estimated to be $1,750 above a mortgage incumbrance. At the time the representations were made as to the purchase of lumber, the defendant had not purchased and paid for the same as he represented, nor has the same ever been purchased and delivered to the plaintiffs. And when the defendant made the aforesaid representations to the plaintiffs with reference to the quantity of land in said tract and as to his purchase of lumber which was to be delivered to the plaintiff Johanna, he knew that such representations were false, and he knowingly and willfully made said false representations with intent thereby to deceive the plaintiffs, and to induce them to convey the property on Julius street, to the defendant, and to pay to him the said sum of $500 ; and relying upon the truth of said representations they were deceived and defrauded by the defendant. The land conveyed by the defendant to the plaintiff Johanna, was of the value of ten dollars per acre. In form the deed was adequate, and did convey title to the premises in question.

Upon the trial below the defendant, for the purpose of showing the value of his farm when it was conveyed, as compared with the value of the Julius street property which he received in exchange, asked a witness the following question : " How did the farm compare in value with the house, . . . which was worth the most?" This was objected to by the

Gustafson et Ux. v. Rustemeyer.

plaintiff, the court held it to be immaterial, and said "that is excluded for the present." To this the defendant excepted, and asked the court to allow the stenographer to note an exception. The court replied, "I will eventually." Nothing more appears to have been done about the matter.

One of the plaintiffs, the wife, was called as a witness to testify to a conversation she had with the defendant, about a month before the deed of the farm was delivered to her, concerning the size of each of the three pieces of land. As she was about to testify the following occurred:—" Q. What, if anything, did Mr. Rustemeyer say,—did you hear him say anything about the number of acres of land there was in that farm? Mr. Henney: I object. Mr. Barbour: On what ground? Mr. Henney: On the ground that this conversation had taken place in August; late in August is too remote. They made no bargain at that time. The deed is dated the 28th of September; they made no bargain at that time, no deeds were drawn. The deed was drawn here in Hartford, or drawn in Suffield, and executed here in Hartford, and so it was over a month between the conversation and the final transaction. Inasmuch as they made no bargain then, they cannot base any false representations upon a statement made at that time. The court: Was this part of the inducement as you claim? Mr. Barbour: Yes sir, on which the final bargain was made. The court: You may ask it. Mr. Henney: Will your Honor note an exception? The court: I take it this led to the bargain. Mr. Barbour: Yes sir. The court: Go on with the examination." The witness then testified in substance that the defendant at that time said that the home lot contained 6 acres, the second piece 120 acres, and the third piece 60 acres.

Upon the trial the plaintiffs claimed that the rule of damages, in case of judgment for the plaintiffs, should be the difference between the value of the property which the defendant represented that he owned and conveyed, and its value if it had been as represented. The defendant claimed that the measure of damages was the difference between the value of the tract of land in Suffield and the value of the

property given by the plaintiff in exchange for it. With reference to these claims the court said: "Adopting either rule, I find from the evidence as to the value of the several properties, that the result would be approximately the same, and that the sum of $925 is the amount of damages which the plaintiff, Johanna Gustafson, is entitled to recover under the allegations of the complaint and the facts proven at the trial."

In the reasons of appeal the defendant claims that the court below erred: (1) in sustaining the demurrer to the counterclaim; (2) in sustaining the objections to the interrogatories of defendant's counsel as set forth in the finding; (3) in holding that all the representations and agreements of the defendant as to the dimensions of the tract of land set forth in the warranty deed, were not embraced in the deed itself and in the descriptions contained therein; (4) in not assessing damages upon some established rule; in refusing to adopt some rule as to the measure of damages, and in approximating damages to the injury complained of, instead of awarding them in accordance with the rules of exact justice.

*William F. Henney*, for the appellant (defendant).

The representations as to dimensions were not facts peculiarly within the knowledge of the defendant, nor such as the plaintiffs were bound to rely on, but were all made upon the premises, which were open to the observation and examination of the plaintiff, and could easily have been correctly ascertained by measurement before the deeds passed, September 28th, 1894, as they were all made fully a month prior to that date. *Walmsley* v. *Currence*, 25 W. Va. 543; *Crown* v. *Carrager*, 66 Ala. 590; *Chrysler* v. *Canaday*, 90 N. Y. 277; *Simar* v. *Canaday*, 53 id. 306. The court erred in sustaining the demurrer to the counterclaim, thus preventing the defendant from offering evidence to show that the representations as to the value of the Julius street property were falsely made with the intent to induce the defendant to part with his property to his damage. *Simar* v. *Canaday, supra*. The court erred in excluding the testimony offered to show the comparative value of the Suffield farm and the Julius street

property. It is settled in cases of this kind in the Federal Courts, that the true rule of damages is not the difference in value between what plaintiff got and what he bargained for, but the difference between the value of what he gave and what he received in the trade. *Smith* v. *Bolles*, 132 U. S. 129; *Atwater* v. *Whiteman*, 41 Fed. Rep. 428; *Glaspell* v. *Northern Pacific R. Co.* 43 id. 900. Defendant was entitled to have the court adopt a definite rule of damages. This would seem to be self-evident. The court erred in refusing to hold, under all the circumstances of this case, that all the representations as to the dimensions of the property were embraced and must be found in the descriptive part of the deed itself.

*Joseph L. Barbour*, for the appellee (plaintiff).

The court did not err in sustaining the demurrer to the counterclaim. Misrepresentations must be of a fact, not expressions of opinion. Statements as to value are usually expressions of opinion, not to be relied on. *Homer* v. *Perkins*, 124 Mass. 431; *Gordon* v. *Butler*, 105 U. S. 553; *Ellis* v. *Andrews*, 56 N. Y. 83–85; *Schranum* v. *O'Connor*, 98 Ill. 539; *Anderson* v. *M'Pike*, 86 Mo. 293; *Dawson* v. *Graham*, 48 Iowa, 378; *Slade* v. *Greviston*, 93 Ind. 591; *Chrysler* v. *Canaday*, 90 N. Y. 272–279. If the evidence had been definitely and finally excluded, and exception duly taken, it would not have been admissible for the purpose for which it was offered, to wit: to fix the measure of damages. That rule is settled in this State by the case of *Murray* v. *Jennings*, 42 Conn. 9. See also *Brush* v. *Keeler*, 34 id. 500; *Scranton* v. *Mechanics Trading Co.*, 37 id. 130; *Krumm* v. *Beach*, 96 N. Y. 398; *Stiles* v. *White*, 11 Met. 356; *Morse* v. *Hutchins*, 102 Mass. 439. A deed is not such a written instrument as will compel the exclusion of parol testimony as to its consideration, or antecedent representations concerning it. *Belden* v. *Seymour*, 8 Conn. 304; *Meeker* v. *Meeker*, 16 id. 387; *Baldwin* v. *Carter*, 17 id. 205; *Clark* v. *Tappin*, 32 id. 69. Parol evidence is admissible to contradict, vary, or avoid a written instrument, where it clearly shows that but

for the oral stipulations it would not have been executed. *Warner* v. *Landis*, 137 Pa. St. 61; *Pierce* v. *Woodward*, 6 Pick. 206; *Willis* v. *Hulbert*, 117 Mass. 151. Rules of evidence which exclude parol proof, when offered to affect written instruments, will generally give way and allow the fraud to be proved. *Collins* v. *Tillou*, 26 Conn. 368; *Dale* v. *Gear*, 38 id. 15; *Felts* v. *Walker*, 49 id. 98; *Busick* v. *Van Ness*, 44 N. J. Eq. 82; *Deakins* v. *Alley*, 9 Lea, 494. Parol evidence is admissible to prove fraudulent representations inducing a written contract for the sale or exchange of land. *Wilson* v. *Haecker*, 85 Ill. 349. It is admissible to prove fraudulent representations by a lessor which induced the lessee to execute a lease. *Morris* v. *Shakespeare*, 11 Central Rep. (Pa.) 196. The failure of the trial court to adopt a specific rule of damage, if erroneous, worked no injury to the defendant; inasmuch as it appears that the result would have been substantially the same, whichever rule had been adopted. *Wooster* v. *Glover*, 37 Conn. 316; *Brush* v. *Keeler*, 34 id. 499; *Kelsey* v. *Hanmer*, 18 id. 320.

TORRANCE, J. The first question to be considered is whether the court erred in sustaining the demurrer to the counterclaim. The false representation therein set out and relied upon, relates simply to the worth of the Julius street property over and above the incumbrances. It is a mere naked representation of the value of an equity of redemption, and nothing more. The general rule is that a mere naked assertion of value, without more, made between vendor and vendee during negotiations for a sale, though untrue and known to be so by the one who makes it, and relied upon by the other to his hurt, does not constitute an actionable deceit; and this for the reason that such an assertion, in most cases, is, and is understood to be, the statement of an opinion and not of a fact, and the party to whom it is made has no right to rely upon it; and if he does so his loss, if any occurs, is held to be the result of his own folly. Bigelow on Fraud, 490; *Parker* v. *Moulton*, 114 Mass. 99; *Morse* v. *Shaw*, 124 id. 59; *Homer* v. *Perkins*, ibid. 431; *Ellis* v. *Andrews*, 56

N. Y. 83; *Chrysler* v. *Canaday*, 90 id. 272; *Shanks* v. *Whitney*, 66 Vt. 405, 29 Atl. Rep. 367. See also cases cited in note to *Cottrill* v. *Krum*, 100 Mo. 397, in 18 Amer. St. Rep. 556.

There are undoubtedly exceptions to this general rule, arising out of the special circumstances under which the representation as to mere value is made; as for instance where the one who makes the representation holds a position of trust or confidence towards the other, which gives the latter a right to rely on the representation; or where the seller has or assumes to have special knowledge of the value of the property, and the buyer has no knowledge thereof, and the latter, to the seller's knowledge, trusts entirely to the seller's representation; in such cases the seller may justly be held liable for his false representations, because by them the buyer is fraudulently induced to forbear inquiry as to their truth.

A mere false representation as to the value of real estate, knowingly made by the seller to the buyer, is not actionable unless the buyer has been fraudulently induced to forbear inquiry as to its truth; and in that case the means by which he was thus induced to forbear inquiry must be specifically set forth in the pleading. "To such representations the maxim *caveat emptor* applies. The buyer is not excused from an examination, unless he be fraudulently induced to forbear inquiries which he would otherwise have made. If fraud of this latter description is relied on as an additional ground of action, it must be specifically set forth in the declaration, and cannot be charged in general terms only." *Parker* v. *Moulton*, 114 Mass. 99, 100; *Ellis* v. *Andrews* and *Chrysler* v. *Canaday*, *supra*.

Upon the counterclaim as it stands, the defendant's case falls within the general rule and not within any of the recognized exceptions. If he desired to bring it within any of these exceptions he should have alleged the specific facts which would bring it within one of them; but this he did not do, and for this reason the demurrer was properly sustained.

In his brief the defendant claims, in substance, that the

general principles here applied to the statement of facts in the counterclaim, if applied to the facts found, show that the plaintiffs have no cause of action. He says : " Misrepresentations of the dimensions of the farm in question by the defendant to the plaintiff, even though intentional, cannot lay a foundation for an action upon the facts found by the court."

If the defendant were at liberty to make this claim here, it might be shown in reply that the facts set up in the counterclaim, and the facts found, differ very materially, and that this difference may be just the difference between a false representation that is actionable and one that is not. But the defendant, under the statute (General Statutes, § 1135), is not at liberty to make this claim here, because he did not make any claim of this kind in the court below, nor has he made it in his assignments of error. Under the circumstances of this case we decline to consider this claim.

The defendant claims that the court excluded the evidence of the value of the Julius street property, as compared with the value of the farm, and that it erred in so doing. Although there is some doubt as to whether the court did absolutely and finally rule this evidence out, we will consider the case as if it had so ruled.

The defendant claimed that the measure of damages was the difference between the value of the farm and the value of the property given in exchange for it; while the plaintiffs claimed that it was the difference between the value of the property which the defendant owned and conveyed, and its value if it had been as represented. From the record it is clear that this evidence was offered solely as bearing upon the question of damages, and on the assumption that the rule as to the measure of damages was as claimed by the defendant. In his brief the defendant now claims that the evidence was admissible for another purpose, namely as " tending to show the improbability of his having made the representations complained of." The evidence was undoubtedly admissible for this purpose, and for other purposes; for instance as evidence, but not conclusive, to show from the price paid the value of the farm conveyed to the plaintiffs. Bigelow

on Fraud, 627, 628 ; 3 Sutherland on Damages, 592. But the trouble with this claim is that it was not made in the court below, and cannot be considered now. The question, then, whether the court erred in excluding this evidence, depends on the further question, what is the proper measure of damages in cases of this kind? A vendee induced to purchase land by false and fraudulent representations, may, acting seasonably, rescind the contract, and after giving or offering to give back what he received, recover back the consideration ; or he may retain the land and recover damages, in a proper action, for the deceit. *Ives* v. *Carter,* 24 Conn. 392, 403 ; *Krumm* v. *Beach,* 96 N. Y. 398 ; *Vail* v. *Reynolds,* 118 id. 297 ; *Pryor* v. *Foster,* 130 id. 171.

The present case is one where the plaintiffs have elected to keep the land and seek to recover for the deceit in an action of tort, and the question is, what is the measure of damages in this action? Upon this question the decisions of the courts of last resort are not in harmony. In one class of cases the measure of damages is held to be the difference between the actual value of the property at the time of the purchase, and its value if the property had been what it was represented or warranted to be ; while in the other class of cases it is held to be the difference between the real value of the property retained by the plaintiff, as it was at the time of the purchase, and the value of that which he gave for it. In the former class of cases the plaintiff is allowed the benefit of his bargain, in the latter he is not. *Morse* v. *Hutchins,* 102 Mass. 439, is an example of the first class of cases, while *Smith* v. *Bolles,* 132 U. S. 125, is an example of the other class.

In *Morse* v. *Hutchins,* p. 440, the court say : " It is now well settled that, in actions for deceit or breach of warranty, the measure of damages is the difference between the actual value of the property at the time of the purchase, and its value if the property had been what it was represented or warranted to be. . . . This is the only rule which will give the purchaser adequate damages for not having the thing which the defendant undertook to sell him. To allow to the

plaintiff . . . only the difference between the real value of the property and the price which he was induced to pay for it, would be to make any advantage lawfully secured to the innocent purchaser in the original bargain inure to the benefit of the wrongdoer; and, in proportion as the original price was low, would afford a protection to the party who had broken, at the expense of the party who was ready to abide by, the terms of the contract."

In *Smith* v. *Bolles,* p. 129, on the other hand, it was said : " The measure of damages was not the difference between the contract price and the reasonable market value, if the property had been as represented to be, even if the stock had been worth the price paid for it; nor, if the stock were worthless, could the plaintiff have recovered the value it would have had if the property had been equal to the representations.    What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. The suit was not brought for breach of contract.    The gist of the action was that the plaintiff was fraudulently induced by the defendant to purchase stock upon the faith of certain false and fraudulent representations. . . . The defendant was liable to respond in such damages as naturally and proximately resulted from the fraud.    He was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation."

Both of these cases relate to sales of personal property, but no distinction is made, in the application of these rules, between sales of personal and sales of real property; Bigelow on Fraud, 627 ; Sedg. on Damages (2d ed.) [559]; 3 Sutherland on Damages, §1171 ; and no good reason has yet been given why there should be any such distinction.    Both courts, in the cases above mentioned, recognize the existence of the general rule that the defendant is only liable for such damages as are the natural and proximate result of his fraud, but they differ in applying it.    In *Morse* v. *Hutchins,*

the loss of the benefits of his bargain is regarded as one of the elements of plaintiff's damage resulting naturally and proximately from the fraud, while in *Smith* v. *Bolles* such loss is not so regarded.

The general rule in regard to the measure of damages in actions of deception has been stated, and we think correctly, as follows: "The defendant is liable, not for everything that follows upon his fraud, but for what may be presumed to have been within his contemplation at the time, as a man of average intelligence." Bigelow on Fraud, 625. Applying the general rule as thus stated to a case like the present, we think the loss of the benefits of the bargain is one of the elements of damages which the defendant must be held to have contemplated as the natural and proximate result of his conduct, and for which he is therefore answerable. In Bigelow on Fraud, 627, the rule is stated as follows: "It is now well settled that in actions for deceit or breach of warranty in sales, of personalty or realty, the measure of damages is the difference between the actual value of the property at the time of the purchase, and its value if the property had been what it was represented or warranted to be;" citing numerous cases. This is the rule also as stated and favored in 3 Sutherland on Damages, pp. 589, 592. It is the rule adopted and followed in numerous cases relating to the sale of personal property, and it is the rule adopted and followed in the following cases relating to the sale of real estate: *Krumm* v. *Beach* and *Vail* v. *Reynolds, supra,* in New York; *Drew* v. *Beall,* 62 Ill. 164, 168; *Nysewander* v. *Lowman,* 124 Ind. 584; *Page* v. *Parker,* 43 N. H. 363; *Shanks* v. *Whitney,* 66 Vt. 405; *Williams* v. *McFadden,* 23 Fla. 143. Moreover it is the rule adopted and followed by this court in *Murray* v. *Jennings,* 42 Conn. 9. In that case it does not appear to have been much discussed, but its application was directly in question, was indeed the only question in the case, and it was specifically and deliberately adopted and followed. We see no good reason why it should not be considered as the settled rule in this State.

The evidence of the value of the Julius street property,

then, having been offered solely for the purpose of showing the amount of the plaintiffs' damages under the rule laid down in *Smith* v. *Bolles*, *supra*, was inadmissible, and the court committed no error in excluding it for that purpose.

The defendant further claims that the court erred in holding that all his representations as to the number of acres in the farm " were not embraced in the deed itself and the descriptions contained therein." From the objectionable way in which this matter is stated in the record, by transcript from the stenographer's notes instead of a brief statement of the point by the court in the ordinary manner, it is a little doubtful just what the precise claim of the defendant was before the lower court upon this point. He seems to claim that as the false representations were made about a month before the deed was made, they were too remote in time to be admissible ; but in his brief he says the court " erred in refusing to hold that all the representations as to the dimensions of the property were embraced and must be found in the descriptive part of the deed itself." He says, in effect, that the representations were made a month before the deed was given, that plaintiffs had ample opportunity during that month to find out whether they were true or false, and that they then accepted a deed repugnant on its face to the representations ; and that these facts show that it is " hardly credible that after all these representations the defendant executed, and the plaintiffs accepted, a deed radically different from their tenor."

These facts were entitled to great weight as evidence bearing upon the question whether the plaintiffs relied on such representations, and whether they were made at all, and we must upon this record assume that the court gave to them all the weight to which they were entitled ; but in spite of them the court found against the defendant on this point as upon a matter of fact, and we cannot review that finding here.

We understand the real claim of the defendant, upon the point now in question, to be that evidence of the oral representations was inadmissible because it tended to contradict,

or vary, or add to the deed in some way; that all such representations prior to the deed were merged and embraced in it, and so could not be proved.

This claim is not tenable. The evidence was not offered to contradict, add to, or vary, the deed, but to show the fraud as alleged, which could be shown in no other way. It was offered to show the false representations which induced the plaintiffs to enter into this transaction and to accept the deed. Certain monuments were pointed out by the defendant to the plaintiffs as marking the bounds of the land as to which they were in treaty, which in fact were situated outside of it. This was done with an intent to deceive, and led her to accept the deed subsequently tendered, without having the property surveyed or making any further examination as to the number of acres embraced within the boundaries mentioned in the conveyance. Her omission to take such steps was a natural consequence of the fraudulent representations. They had precisely the effect designed by the defendant, and he was properly held responsible for the resulting damage. As was said in *Russell* v. *Tuttle*, 2 Root, 22: "This action is not laid upon the writing, but for the fraud . . . which can be no otherwise proved than by the testimony of witnesses." In *Cabot* v. *Christie*, 42 Vt. 121, a vendor orally and falsely represented that a farm contained one hundred and thirty acres, when it contained but one hundred and seventeen, and it was held that although a parol warranty could not be shown as against the deed, fraud in representing the quantity could be shown. In *Whitney* v. *Allaire*, 1 Coms. 305, 308, it is said: "For more than thirty years it has been the settled doctrine of the courts of this State, that fraudulent representations in reference to the title of real estate, accompanied with damage, is a good cause of action, and that it is immaterial whether any or what covenants are contained in the deed of conveyance."

In *Carvill* v. *Jacks*, 43 Ark. 439, a vendee induced to accept a deed by false and fraudulent representations, sued for damages for the fraud, and it was held that notwithstanding the deed and its covenants, he could prove the

oral representations. A similar ruling was followed in *Dano* v. *Sessions*, 65 Vt. 79, *Keefe* v. *Sholl*, 181 Pa. St. 90, and *Griswold* v. *Gebbie*, 126 id. 353, cases where vendee, after a deed to him, sued for fraud in the sale of real estate. See also the following cases where fraud was allowed to be shown notwithstanding the fact that the evidence in one sense tended to contradict a writing: *Cummings* v. *Cass*, 52 N. J. L. 77; *Mallory* v. *Leach*, 35 Vt. 156; *Cole* v. *High*, 173 Pa. St. 590; *Feltz* v. *Walker*, 49 Conn. 93–98; *Fox* v. *Tabel*, 66 id. 397–400. The court below did not err in admitting the evidence in question.

In his last assignment of error the defendant claims, in effect, that the court failed to adopt and apply any fixed rule as to the measure of damages, and did not assess them "in accordance with the rules of exact justice." The record shows that the parties upon the trial made specific conflicting claims with respect to the rule of damages, and they were entitled to have the true rule applied, and to know which of the conflicting rules was applied by the court. It was the duty of the court to adopt and apply the rule which the plaintiffs contended for, and it was also its duty to make this known to the parties in some way. The record upon this point is not as clear as it should be. It says: "Adopting either rule, I find from the evidence as to the value of the several properties, that the result would be approximately the same." The fact implied in this statement, that the court had heard and considered evidence as to the value of both properties, would seem to indicate the adoption of the rule which the defendant contended for, while there are other things elsewhere in the record which seem to indicate that the court adopted the other rule. The record does not show, either expressly or by clear implication, which of the conflicting rules the court adopted and applied. Perhaps the fair import of the record is, that in the process of assessing the damages the court applied both rules and, finding the results approximately the same, did not decide which of them was the true rule and exclusively applicable. It was the duty of the court to decide this question, however,

and to make its decision manifest in some way to the parties, and this was not done. We think the court erred in this, but if, as is found, the application of either rule leads, in this case, to substantially the same result, it is difficult to see how the defendant has been harmed by the error, and for this° reason we do not advise a new trial on account of it.

There is no error.

In this opinion the other judges concurred, except HAMERSLEY, J., who dissented.

HAMERSLEY, J. (dissenting). In an action of fraud the plaintiff can recover the amount of his actual damage. The elements of actual damage depend on the circumstances of each case, are widely variant, and can hardly be defined accurately in a general rule. Where a vendor warrants an article sold to be of a certain kind, he makes a special contract to indemnify the vendee for any loss by reason of the article not being of that kind; and so, in case of a breach of the warranty, he is bound by force of the contract to put the vendee in the same position he would have occupied if the article had been as warranted. In other words, the damage to the vendee is the loss of the benefit of his contract. In a large class of sales of personal property a contract of warranty may be established by proof of false representations. In such cases it has been held that so far as the damage was concerned, it was immaterial whether the form of action was the one provided in case of fraud or in case of breach of warranty; that in either case a contract was established by the same proof, and in either case the plaintiff was entitled to the benefit of his contract; but entitled to that benefit solely because the contract had in fact been validly proved. And so for this class of cases a special rule was recognized, that in actions of fraud where a sale had been induced by false representations, the plaintiff could recover the benefit of his contract. But it is evident that such rule implies an existing contract of indemnity, and cannot apply where such a

contract is not proved.  It might have been better if in such cases the courts had held the plaintiff to his action of contract, when he merely sought to recover for its loss ; but it is certain the rule cannot be extended beyond its reason, without leading to unfortunate confusion in respect to the features which distinguish contract from tort.  I do not understand the majority of the court to question this, but to hold that the present case is within the reason of this special rule.  It seems to me, however, that it is not.  False representations as to certain classes of personal property may establish a contract of warranty ; this is not true as to representations of the dimensions of land sold.  A contract of warranty in such case can only be proved by the writing. The present plaintiff could not have recovered the alleged benefit of his contract in an action for a breach of contract. There was no legal contract of indemnity and he could, therefore, prove no breach and no damage.  There was a fraud which induced an exchange of land, and he can recover for the damage resulting from that exchange ; but not, as it seems to me, for the loss of the benefit of a contract which he has not made.

I think, also, that the error in refusing to assess damages in accordance with a rule adopted by the court, is fatal.  If we assume that the judge made a separate assessment under each rule and reached substantially the same result, yet he did not reach the same result, whatever latitude we may give to the word " substantially."  The assessment adopted must have followed one or the other rule (for the judgment is clearly illegal if he followed neither) ; and if his judgment following the wrong rule is a single dollar larger than it would have been following the right rule, it involves the violation of a legal right.  To sustain the judgment on the ground that no practical injury was done, the assessment under each rule must have been validly made ; but the assessment under the rule claimed by the defendant, was made, if not without evidence, yet in the absence of material evidence which the defendant was not permitted to introduce.  I think there is error and that a new trial should be granted.