## JOSCELYN E. LOVEJOY vs. GEORGE A. ISBELL.

Third Judicial District, Bridgeport, October Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, JS.

By filing an answer and proceeding to trial the defendant waives all
formal defects in the complaint, including an unnecessary and im-
proper division of its allegations into two counts.

In an action for fraud in exchanging property, the plaintiff may show
that the defendant's offer to trade back was not made in good faith
but was a mere subterfuge.

Fraudulent misrepresentations as to the location of the boundaries of
land, made by the vendor to an intending purchaser while inspect-
ing the premises, are not rendered inadmissible because the land
thus indicated as covered by the sale was not in fact within the
boundaries of the land conveyed, nor within the lines of a survey
which the plaintiff had introduced in evidence.

Evidence of the appearance, character, and value of the land which was
falsely represented as part of the tract to be sold, is relevant upon
the question of damage and fraudulent intent.

In the present case the complaint failed to allege what the value of the
land would have been if the representations had been true, and
what the land was in fact worth at the time of the sale. *Held* that
after a trial and verdict upon a denial of the averments of the com-
plaint, they must be regarded as sufficient, and, if defective, as
having been waived.

Representations as to the acreage of a tract of land offered for sale stand
on a somewhat different ground from naked representations of value.
If made positively, as an assertion of an existing fact, and if believed
and acted upon, they may constitute an actionable fraud, although
the vendee might have ascertained their falsity.

Upon the farm in question there was a mortgage for $1,000 which the
plaintiff assumed and agreed to pay as part of the purchase price,
and some evidence was offered tending to show that the farm was
worth only $800. The court instructed the jury that in applying
the general rule of damage, which had been given them, they would
reach a correct result if they ignored the mortgage altogether, and
simply ascertained the difference between the value of the land
the plaintiff would have received had it been as represented, and
the actual value of that conveyed to her by the deed, and to this
amount added interest at six per cent. *Held* that this was a prac-
tical suggestion consistent with the general rule and afforded the
defendant no cause of complaint.

Whatever may be its weight, evidence of the value of the property given

Lovejoy *v.* Isbell.

in exchange by a plaintiff who claims to have been defrauded, is relevant upon the question as to what would have been the value of the property which he was to receive in return, had it been as represented.

Argued October 23d—decided December 18th, 1900.

ACTION to recover damages for fraud in the exchange of property, brought to the Superior Court in New Haven County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment for the plaintiff for $725, and appeal by the defendant for alleged errors in the rulings and charge of the court. *No error.*

In the first count of her amended complaint the plaintiff, a resident of New York, alleged that the defendant represented himself as the owner of thirty acres of good farming land in Hamden, Connecticut, and offered to exchange it for certain personal property of the plaintiff in Yonkers, New York; that believing such representations to be true, she conveyed her property, worth $1,500, to the defendant in exchange for the farm; that the defendant did not then own the land nor had he since acquired title to it; that his representations were false and were willfully and maliciously made with intent to secure the plaintiff's property and to defraud her.

The second count, which repeated much of the first, alleged that the plaintiff believed the defendant's representations that the land was " good farming land and contained thirty acres," and in consequence thereof conveyed her property to him; that such representations were false, and the whole tract of land was unsuitable for farming and contained only eighteen and one quarter acres. The damages were laid at $2,500.

Upon the trial of the cause to the jury, the plaintiff claimed to have established the following case: In answer to her advertisement offering to exchange a boat-house, float, sail boat, etc., for a farm, cottage or improved lots, she received the following letter from the defendant: "New Haven, Ct., April 29th, 1895. Have a farm near this city that we would exchange with you for your float, boats, etc. If you are in-

terested send full particulars. Geo. A. Isbell, 708 Chapel St."

The plaintiff then wrote the defendant for further information and received a second letter as follows: "New Haven, Ct., April 30th, 1895. Your favor recd. Have farm of 30 acres about $1\frac{1}{2}$ miles from depot, some 7 miles from this city, fine stream of water, large 2-story frame house, in good condition: large barn. There is a mortgage on this place for $1,500, on which there has been some $500 paid, leaving about $1,000 now due on mortgage, which can remain as long as desired, if interest is kept paid. If you think this would suit you come up and see it. I will try and make a fair deal with you. Take night boat from Peck Slip: will land you here in morning. You can go back at night: excursion ticket, $1.50. You will lose but one day. I will take you out and show the farm; or come by rail: cost $3 round trip. If you are interested come up Wed. night or Friday night. I shall be out of town Friday, but would show you the farm Thurs. or Sat. Let me hear if I shall expect you. Yours truly, Geo. A. Isbell, 708 Chapel St."

In reply to another inquiry for a more detailed description of the farm, its value, of the mortgage, etc., the defendant again wrote: "New Haven, Ct., May 2d, 1895. Your favor recd. I think $1025 is the exact amount of the mortgage at present. No other mortgage on the property: 8 or 9 rooms in house: cellar under the house. It is now rented. All kinds of crops could be grown: some fruit trees. Mortgage can be transferred. I have not seen your property: could not say exactly. Would like to have you come up and see it. I live at 273 Norton St.; if you take car when you leave the boat ask the conductor to leave you at Norton St. You will get out to the house soon enough to take breakfast with me. Hoping to see you, I remain, yours truly, Geo. A. Isbell."

A week later the defendant's agent inspected the plaintiff's property in Yonkers and in New York, and represented to her that the farm in Hamden was worth $3,000. Afterwards the plaintiff came to New Haven and drove out to Hamden with

the defendant. She then repeated what his agent had said to her about the farm being worth $3,000, and he replied, "Yes, I guess it is"; but added that he did not know the value of real estate. The defendant had been in the real estate business for thirty years and made a speciality of farms.

The plaintiff also claimed and offered evidence to prove that the defendant pointed out to her two valuable lots across a stream, which did not in fact belong to him, and represented that they formed a part of the land which she would get. One of them, known as the "Dudley lot," of about ten acres, was especially suitable as the site for a house, as the defendant suggested.

The farm as subsequently conveyed to her was described in the deed as "thirty acres more or less," but contained only eighteen and one quarter, and did not embrace the two tracts above mentioned. The deed referred to the existence of a mortgage on the farm for $1,029, "which the grantee hereby assumes and agrees to pay."

The grantor in the deed under which the defendant claimed title was one George W. Thomson, and the name of the grantee was not filled in. This deed was dated March 6th, 1894. The defendant explained that he had acquired the farm from Thomson in a trade, and that the deed had been drawn in blank so that later the defendant might fill in any name he desired.

The defendant offered evidence in contradiction of the material claims of the plaintiff, which also tended to show that the plaintiff consulted a lawyer who advised her that the deed was all right; that she looked at the land records and enquired of the town clerk as to the condition of the title and the value of the farm; and that he, the defendant, had good reason to believe that the farm he sold contained thirty acres.

Further facts material to the case are stated in the opinion.

*E. P. Arvine* and *George E. Beers*, for the appellant (defendant).

*John A. Matthewman*, for the appellee (plaintiff).

HAMERSLEY, J.    The complaint describes a single trans-action, viz, the exchange of a farm for personal property. The ground of the action is deceit practiced by the defendant with intent thereby to induce the plaintiff to transfer her personal property to him, and to defraud her.    The deceit alleged consisted in false representations as to the farm, knowingly and fraudulently made by the defendant, and believed and acted on by the plaintiff.    The false representations alleged are (1) a representation of title, viz, that the defendant owned, when in fact he did not own, the land conveyed; (2) a representation of quantity, viz, that the farm contained 30 acres when in fact it contained only $18\frac{1}{4}$ acres; and (3) representations of quality, viz, that the land conveyed was good farming land, when in fact it was unfit for farming.    The damages claimed as the result of this fraud are $2,500.

The complaint is loosely drawn, but there was no demurrer, and so defects of form were waived and cannot now be taken advantage of by the defendant.

The rulings of the court upon evidence and in the charge to the jury must be considered in view of such waiver and of the sufficiency of the complaint in substance.    There was some confusion in the minds of the counsel and court arising from the wholly unnecessary division of the complaint into two counts.    Brown v. Wilcox, ante, p. 100, 104; Dunnett v. Thornton, ibid. 1, 5.    Treated, as the complaint must be, as unaffected by such improper division, the confusion has not worked any material injury to either party.

There is no error in the admission of testimony.    The plaintiff, upon her cross-examination, having admitted that the defendant, when charged with having made false representations, offered to trade back, and that she refused, was permitted on her redirect examination to testify that she refused because some portion of her personal property taken by the defendant had been injured in the removal, some had been lost or destroyed, and she did not know the condition of other portions.    This evidence tended to show that the offer to trade back was made with the knowledge that the parties could not be put in the same position as before the trade.

It was also admissible as showing just what the plaintiff had refused to do.

The plaintiff, having produced in evidence a survey of the $18\frac{1}{4}$ acres described in the deed given her by the defendant, was afterwards permitted to testify that while they were standing in front of the farm house on the premises the defendant pointed out to her a piece of land (which piece was not in fact within the boundaries of the deed subsequently given her, nor within the lines of the survey) which he stated was included in the farm he proposed to sell.

This evidence tended to prove false representation, both as to quantity and quality. The plaintiff and defendant had just inspected the four or five acres about the house, and the plaintiff had said she did not care to trade; things were not as represented. In response the defendant said: "But you haven't seen it all yet," and pointed in the direction of the piece of land across the stream (thereby indicating that the stream was the "fine stream of water" stated as included in the farm, instead of being, as it was in fact, the western boundary) and called her attention to this lot of ten acres, high and level and lying on the side of the stream opposite the house. The evidential force of this deceptive representation is not neutralized by the fact the lot was not within the boundaries of the land conveyed, nor within the lines of the survey the plaintiff had introduced in evidence. The testimony also tended to prove that the false representations charged were made knowingly and with fraudulent intent. *Gustafson* v. *Rustemeyer*, 70 Conn. 125, 139; *Morehouse* v. *Northrop*, 33 id. 380, 386.

The plaintiff having introduced evidence to prove that the defendant had pointed out to her and submitted to her inspection the "Dudley lot," as included within the thirty acres he proposed to sell, evidence of the value of that lot and the appearance and character of the land was properly admitted. The defendant had (if the jury believed the testimony) identified that land as representing land the plaintiff would have acquired if thirty acres had been conveyed to her, and evidence of its value and appearance was rele-

vant to the question of damage as well as to that of fraudulent intent.

We have studied the defendant's requests to charge, the charge, the errors assigned, and the plaintiff's carefully prepared brief, and are satisfied that there is no error in the charge which entitles the defendant to a new trial. Some of the errors assigned relate to passages in the charge which are really comments on the weight of evidence within the discretion of the court, some are based on implications the language of the court will not fairly support, some relate to matters that could not have affected the result, and some rely on formal defects in pleading which the defendant had waived. It can serve no useful purpose to enumerate all these claimed errors. It is sufficient to refer to those controlling claims that seem to raise some material question of law. They are three, and relate to the false representation of quantity.

The defendant asked the court to charge that "as the complaint contains no allegation of the difference between what the value of the land would have been, if the representations had been true, and what it was at the time of sale, no recovery can be had for that representation, except nominal damages"; and the court did not so charge. This is in effect asking the court to direct the jury to return a verdict for the defendant on this part of the case, because the complaint in stating this false representation alleges no cause of action. In fact the complaint does allege a cause of action. The allegations may not be sufficiently direct and explicit to stand against a demurrer, but they are sufficient after verdict, and are sufficient after the defendant has waived objection to the manner of statement by going to trial upon a denial of each of the plaintiff's allegations. *Morehouse* v. *Throckmorton*, 72 Conn. 449, 453.

The court declined to charge, as requested by the defendant, that representations made as to the quantity of land, "where both the vendor and the vendee have had an opportunity to examine the premises, are not actionable," but did charge that "positive and unqualified statements as to the

number of acres in a tract of land may well and generally be regarded as representations of fact, though of course statements as to acreage may be made in such a manner and under such circumstances as to be merely matter of opinion, and in that case they would furnish no ground of liability. The letter referred to uses the language, as I have said, 'Have farm of thirty acres.' You will read the whole letter and consider the whole testimony so far as it relates to quantity of land, and say whether the representations as to quantity of land in the farm, upon which the plaintiff bought, were positive representations of fact, or whether they were made as matters of opinion only. If a positive representation of fact as to the quantity of land is made by the vendor to the vendee, such vendee is under no obligation to make a survey to test the quantity, or to examine the records, or to make further inquiry in regard to it. He is entitled to rely upon it, even if he has opportunity to see the land, and does casually take a look at it, unless upon the view which he had of it the discrepancy was such as that he ought to be found to have known that the representation was not one of fact."

Naked statements of value are in their nature statements of opinion rather than fact; they belong to the "trade talk" that accompanies bargains; they may be so made and under such circumstances as to give rise to an action for deceit, but the general rule is that false statements of this kind do not constitute an actionable deceit. Statements of the acreage of a piece of land offered for sale stand on a somewhat different ground; when positively made they are in their nature statements of fact; they may be so made as to constitute mere opinion or "trade talk," but when found to have been made as a representation of an existing fact, they are subject to the rule governing false and fraudulent representations of existing facts, and if believed and acted on, may constitute an actionable deceit, although the vendee might have ascertained their falsity. *Watson* v. *Atwood*, 25 Conn. 313, 320; *Beckwith* v. *Ryan*, 66 id. 589, 595; *Gustafson* v. *Rustemeyer*, 70 Conn. 125, 134. In view of the condition of evidence and claims, the charge states the law with sufficient clearness to

guide the jury, and fairly leaves to them the facts which may control the application of the law.

Upon the question of damage, the court charged that "the rule of damage is the difference between what the plaintiff in fact got by the trade and what she would have received had the representations been true." No exception is taken to this general statement; but the defendant complains of the application made by the court in the following passage of the charge: "There is some testimony in the case tending to show that the farm was worth only $800, a sum less than the mortgage; and it appears from the deed that the plaintiff agreed to assume and pay the mortgage. The mortgage is a fixed quantity, and the jury in seeking to apply the rule will reach the correct result if they simply ascertain the difference between the actual value of the property described in the deed, without any regard to the mortgage, and the value of such land as the plaintiff would have received had it been as represented, without any regard to the mortgage upon it, and to that sum add interest at the rate of six per cent; the amount would represent just compensation." This is a suggestion in view of the facts of the case that might practically aid the jury in reaching a result consistent with the general rule of damage. No reason was given in argument for exception to this statement, and we do not see how it could have injured the defendant.

The court further told the jury that in determining how much the farm in question would have been worth had it been as represented, "the price paid by the plaintiff, that is, the value of the property which she gave in exchange, is relevant to that question, but of course not conclusive evidence."

Assuming the contention of the plaintiff to have been proved—that the defendant induced her to make the trade on the basis of the truth of his representations—then the property given in exchange represented an estimate made by the plaintiff and by the defendant of the value of the farm on the assumption the defendant's representations were true, and the actual amount of that estimate is relevant, whatever its weight may be, to the question of how much the farm con-

veyed would have been worth had it been as represented. *Gustafson* v. *Rustemeyer*, 70 Conn. 125, 134.

We do not discuss the errors claimed in that portion of the charge dealing with alleged false representations of title and quality. In the main such passages follow the requests of the defendant. There may have been error in defining what would constitute a valid transfer of title (as claimed by the plaintiff in her bill of exceptions), but if so it was favorable to the defendant. The charge practically instructed the jury against any finding in favor of the plaintiff on the ground of false representation of title or quality and, if erroneous on these points, could not have injured the defendant.

The defendant criticises some passages in the charge as misleading the jury in respect to the weight of evidence, especially as bearing on the question of his good faith. The judge did not exceed his discretion in the comments on the weight of evidence. In this, as in the charge as a whole, he was rather favorable to the defendant. There were facts apparent, if not conceded, which indicated a fraudulent intent in the whole transaction; they were dealt with in the charge very tenderly.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.