ALVIN H. WHITING *vs.* EDWARD R. PRICE & another.

Bristol. October 26, 1898. — November 23, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*False Representations — Law and Fact — Damages — Instructions — Offer
to return Property.*

A false representation that a bond of a corporation is secured by a mortgage of
real estate of the value of half a million dollars may be recovered for, although
the bond itself states that it is "secured by a first mortgage on all the property,
rights, and franchises of said company (present and future acquired)."

In an action for false representations in the sale of a bond, whether the plaintiff
was warranted in relying on the representations may be a question for the jury,
notwithstanding the fact that the defendant referred to the sources of his infor-
mation and advised the plaintiff to consult them.

At the trial of an action for false representations in the sale of a bond, the measure
of damages is the difference between the actual value of the bond at the time of
the purchase and its value if it had been what it was represented to be, secured as
represented; and subsequent events may be taken into account in arriving at
the value at the time of the purchase, and may show that the market value was
illusory.

The plaintiff, in an action for false representations in the sale of a bond, need not
offer to return the bond to the defendant.

TORT, against Edward R. Price and Arthur T. Parker, for
false representations in the sale of a bond of the Jacksonville
Electric Light Company. After the former decision, reported
169 Mass. 576, the case was tried in the Superior Court, before
*Richardson,* J.

The jury returned a verdict for the plaintiff; and the defend-
ants alleged exceptions, which appear in the opinion.

*H. J. Fuller,* (*W. H. Pond* with him,) for the defendants.

*G. A. Perkins,* for the plaintiff, submitted the case on a brief.

HOLMES, J. This is an action for false representations,
which has been before the court already upon a demurrer to the
declaration. 169 Mass. 576. It now comes up upon exceptions
taken at the trial.

The bond respecting which the representations were made
stated that payment was "secured by a first mortgage on all
the property, rights, and franchises of said company (present
and future acquired)." The representation proved was that the

bond was secured by a mortgage of real estate of the value of half a million dollars. In fact, the company owned no real estate, and the bond was not secured by a mortgage of real estate. An exception was taken to a ruling allowing the plaintiff, even if he had read the bond, to recover for this further statement about the security. We see no reason for the exception, and none is offered for it. The alleged representations did not contradict the bond, they made specific and definite what the bond left vague.

The defendant Parker stated to the plaintiff at North Attleborough what he alleged he had been told by several persons, named, living in the town and known to the plaintiff. The defendant advised the plaintiff to see and consult with them. The defendant asked a ruling to the effect that the plaintiff could not recover for such statements when he was referred to the sources of the defendant's alleged information. This was refused, the judge intimating that it depended on the circumstances, and seemingly leaving it to the jury whether the plaintiff ought to have inquired of the persons named. So far as appears, this was the proper course. It is true that in cases of representations as to quality, correspondence to sample, etc., of goods exhibited in the buyer's presence, the court has ruled that if the buyer had full means of ascertaining the truth for himself, he could not set up that he was imposed upon by fraud ; *Salem India Rubber Co.* v. *Adams,* 23 Pick. 256, 265 ; *Slaughter* v. *Gerson,* 13 Wall. 379 ; *Long* v. *Warren,* 68 N. Y. 426 ; and that a verdict has been directed partly on that ground. *Poland* v. *Brownell,* 131 Mass. 138. See *Bayly* v. *Merrel,* Cro. Jac. 386. But the requirement as it has been worked out does not call for more than reasonable diligence ; *Holst* v. *Stewart,* 161 Mass. 516, 522 ; *Brown* v. *Leach,* 107 Mass. 364, 368 ; *Nowlan* v. *Cain,* 3 Allen, 261, 264 ; and distance or other slight circumstances have been held sufficient to warrant leaving the question to the jury. *Holst* v. *Stewart,* 161 Mass. 516, 522, 523. See *Burns* v. *Lane,* 138 Mass. 350, 355, 356 ; *Whiteside* v. *Brawley,* 152 Mass. 133. The matter may have been confused a little by not distinguishing between seller's talk as to value and the like, where the rule is absolute in ordinary cases that the buyer must look out for himself, and representation of facts con-

cerning which even sellers may be held liable for fraud, and as to which the buyer may be warranted in relying wholly on the seller's word. The notion that the buyer must look out for himself sometimes has been pressed a little too strongly into the latter class of cases.

The judge, at the defendant's request, instructed the jury that the measure of damages was the difference between the actual value of the bond at the time of the purchase and its value if it had been what it was represented to be, secured as represented. *Morse* v. *Hutchins*, 102 Mass. 439, 440. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, 587. He then instructed them further that they "would inquire what the value of the bond was at that time in view of the circumstances which have transpired," and what it would have been if it had been secured as according to the plaintiff's evidence the defendant said it was, adding, "You will take into account what has happened since in order to determine what the value of the bond was and what it is now." The defendants excepted to the further instruction. With some hesitation, we have come to the conclusion that this exception should be overruled with the rest. The reference to the present value of the bond, in the last words quoted, cannot be taken to have overruled the express direction as to how the damages were to be measured. We think that what was added to that express direction merely amounted to allowing the jury to take subsequent events into account in arriving at the two values at the time of the purchase, which the jury were directed to compare. We cannot say that this was wrong. The market value of the bond at the time of the sale may have been illusory, because the public also may have been deceived. The statement which we have quoted, appearing in the bond of an electric light company, certainly conveys the impression that it has a plant and property which naturally would include land. Or if it be answered that the public, which makes market prices generally, looks a little further than such vague words, the question remains what would have been the value of a bond adequately secured, when the public were willing to pay par for one depending so far upon speculation for its value that subsequent events have shown it to be worthless. The subsequent events may be likened to the coming out of a

latent disease existing in a horse at the time of a fraudulent sale, to take an example put by Cockburn, C. J., in *Twycross* v. *Grant*, 2 C. P. D. 469, 544. It was intimated that subsequent events might be considered in *Coffing* v. *Dodge*, 167 Mass. 231, 241, and it was decided that they might be, in order to determine the worth of stock, in *Peek* v. *Derry*, 37 Ch. D. 541, 591 *et seq.*, a decision not affected by the subsequent reversal by the House of Lords, on the ground that fraud was not made out. *Derry* v. *Peek*, 14 App. Cas. 337. See also *Hubbell* v. *Meigs*, 50 N. Y. 480, 492; Sedgwick, Damages, (8th ed.) § 257. We may follow these cases without regard to the possible conflict between the measure of damages in this State, and that adopted elsewhere. It would seem probable that in the present case the jury found the bond to have been worthless, and gave the plaintiff no more than he paid, but with that we have nothing to do.

The plaintiff did not offer to return the bond to the defendants. He was not bound to do so. The action is for false representations and proceeds upon an affirmation of the purchase. *Whiteside* v. *Brawley*, 152 Mass. 133, 134. The dictum in the case of *Hedden* v. *Griffin*, 136 Mass. 229, cited for the defendant, has no bearing. There the plaintiff was induced by the defendant's false representations to take a contract of insurance from a third person. The insurance company was solvent, and the policy was a good policy. The representations went to collateral matters. The plaintiff had a right to rescind, however, which he exercised. It was intimated in the course of the decision that, if he had chosen to keep the contract, his damages would have been only nominal, which very likely was true, as the plaintiff got what he expected. Here the ground of complaint is that the plaintiff did not get what he expected.

*Exceptions overruled.*