MARION P. THOMSON *vs.* GEORGE F. PENTECOST.
ARTHUR F. STONE *vs.* SAME.

Franklin.    September 19, 1911. — November 1, 1911.

Present: RUGG, C. J., HAMMOND, LORING, & BRALEY, JJ.

*Practice, Civil,* Parties, Abatement, Conduct of trial: explanatory instruction. *Deceit. Damages,* In tort.

The non-joinder of a plaintiff in an action of tort can be taken advantage of only by a plea in abatement.

In an action for damages alleged to have been caused by false and fraudulent representations of the defendant whereby the plaintiff was induced to purchase from the defendant certain live stock and the business of a milk route and to take from the defendant a lease of a dairy farm, where the defendant's liability has been established and the presiding judge properly has instructed the jury that the measure of the damages to which the plaintiff is entitled is the difference between the value of what he received under his contract with the defendant and what that value would have been if the defendant's representations had been true, if the evidence has shown that the relations of the parties, the nature of the misrepresentations and the character of the property to which they related were such that the jury may find the application of the rule as to damages attended with much doubt and uncertainty, it is right for the presiding judge to add an explanatory instruction to the effect that " the fact, that the property sold was of such a character as to make it difficult to ascertain with exactness what its value would have been if it had conformed to the contract, affords no reason for exempting the defendant from any part of the direct consequences of his fraud."

In an action for damages alleged to have been caused by false and fraudulent representations of the defendant, whereby the plaintiff was induced to purchase from the defendant, besides certain live stock and crops, the business of a milk route and to take from the defendant a lease of a dairy farm for a year, where it appears that it was the plaintiff's intention to buy an establishsd and successful business which could not be carried on unless a lease of the defendant's farm

could be obtained, and that this intention was known to the defendant, who falsely and fraudulently represented to the plaintiff that the farm under ordinary conditions could be made to yield a profit of $2,000 a year, it is right for the presiding judge to refuse to give the ruling "that the measure of damages in this case is simply the difference, if any, between the price of the property and its actual value at the time of the purchase" and instead to give to the jury the correct instruction that the measure of damages is the difference between the value of what the plaintiff received and what that value would have been if the defendant's representations had been true.

TWO ACTIONS OF TORT for damages alleged to have been caused by false and fraudulent representations of the defendant, whereby the plaintiff Thomson was induced to purchase certain live stock from the defendant and with the plaintiff Stone to take a lease from the defendant of a dairy farm in Northfield, called the Maples Dairy, and the plaintiff Stone was induced to give up a profitable business in which he was engaged in order to become one of the lessees and to manage the dairy. Writs dated March 16, 1907.

In the Superior Court the cases first were tried together before *King*, J. The jury returned a verdict for the plaintiff Thomson in the sum of $1,359.09 and a verdict for the plaintiff Stone in the sum of $268.77. Exceptions alleged by the defendant were sustained by this court, solely on grounds relating to the measure of damages, in a decision reported in 206 Mass. 505. In that decision this court declared that the right of each plaintiff to a verdict was settled and ought not to be reopened, and that a new trial must be had only upon the question as to the amount of damages in each case.

Such a new trial was had before *Crosby*, J. The course of the trial and the charge of the judge are described sufficiently in the opinion.

The plaintiffs' second request for an instruction to the jury, which is referred to in the opinion as having been given by the judge, was as follows: "The fact, that the property sold was of such a character as to make it difficult to ascertain with exactness what its value would have been if it had conformed to the contract, affords no reason for exempting the defendant from any part of the direct consequences of his fraud."

The defendant asked the judge to make the following rulings:

"1. That the plaintiff Marion Thomson, having agreed that

the property bought by her from the defendant was of full value, and that there was no misrepresentation as to the property itself for which she paid value, the plaintiff is entitled to recover only nominal damages.

" 2. That if the jury find that the property which was conveyed by the defendant to the plaintiff Marion Thomson on the ninth day of October, 1906, was worth the sum of $2,725, that being the price which she paid for the same, then the plaintiff is entitled to recover only nominal damages.

" 3. That the measure of damages in this case is simply the difference, if any, between the price of the property and its actual value at the time of the purchase.

" 4. That the plaintiff is not entitled to recover anything except nominal damages on account of the loss of alleged profits."

" 6. That there is no evidence in the case to warrant the jury in finding that the defendant made any misrepresentations as to the value of the stock, crops, milk route or lease or other property conveyed by the defendant to the plaintiff.

" 7. That upon all the evidence the plaintiff Stone is not entitled to recover anything except nominal damages.

" 8. That the plaintiff Stone has offered no evidence showing what the actual value of his new employment was, or what it would have been if the defendant's representations had been true.

" 9. The plaintiffs Stone and Thomson, on the evidence, are not entitled to recover because any action they may have is a joint action."

The judge refused to make any of these rulings. The jury returned a verdict for the plaintiff Thomson in the sum of $900 and for the plaintiff Stone in the sum of $575. The defendant alleged exceptions to the refusal of the judge to make the rulings requested by him and to certain rulings as to the exclusion and admission of evidence, which are referred to in the opinion, and also to the charge of the judge so far as it was inconsistent with the defendant's requests for rulings and to a designated portion of the charge.

*W. A. Davenport,* for the defendant.

*C. N. Stoddard,* (*D. Malone* with him,) for the plaintiffs.

BRALEY, J.  By our former decision the defendant's liability was determined, but because of error in the instructions a new

trial was ordered on the measure of damages only, and no other question remained open for the defendant to contest. *Pratt* v. *Boston Heel & Leather Co.* 134 Mass. 300, 302. *Thomson* v. *Pentecost*, 206 Mass. 505, 513. The cases are again before us upon numerous exceptions which he alleged at the second trial.

It is contended that a verdict for the defendant should have been directed, as, the wrong suffered by the plaintiffs having been joint, they could not sever and bring separate actions. But, if this question were treated as still open, the rule is well settled, that in actions of tort the defendant must plead in abatement the nonjoinder of those whom he contends should have been joined as plaintiffs, and cannot rely on this defence in bar of the action. *May* v. *Western Union Telegraph Co.* 112 Mass. 90, 93.

Nor were the plaintiffs limited to nominal damages, for reasons sufficiently stated in the former opinion, where the nature and extent of the defendant's liability is considered and decided.

The exceptions also to the instructions that if the assessment of exact damages might be difficult because of the character of the property sold, when considered in reference to the terms of the contract, the difficulty in reaching a just result would afford no reason for relieving the defendant from the consequences of his fraud, are groundless. The relations of the parties and the nature of the misrepresentations were such, when viewed in connection with what the plaintiffs bought or were led to believe they had purchased, that the jury might find the application of the rule which was given as to damages attended with much doubt and perplexity. It was not only competent but necessary for the judge to direct their attention to the duty they were required to perform, by giving the plaintiffs' second request. *Morse* v. *Hutchins*, 102 Mass. 439, 440.

It was said in *Thomson* v. *Pentecost*, 206 Mass. 505, 512, that "the damages to which the plaintiffs were severally entitled were to be measured by the difference between the actual value of what they severally received and what that value would have been if the defendant's representations had been true," and throughout the second trial this rule was followed and enforced.

The defendant contended, as shown by his requests, that the measure of damages in an action for deceit is the difference between the value of the property at the time when it is bought and the purchase price. But as was said in *Morse* v. *Hutchins*, 102 Mass. 439, 440, with a citation of the earlier cases, " in actions for deceit or breach of warranty, the measure of damages is the difference between the actual value of the property at the time of purchase, and its value if the property had been what it was represented or warranted to be." It may be, as remarked by Holmes, J., in *Whiting* v. *Price*, 172 Mass. 240, 243, that there is a possible conflict between this rule and the measure of damages adopted in other jurisdictions, but it has been defined and followed in *Hedden* v. *Griffin*, 136 Mass. 229, 231; *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, 581; *Kilgore* v. *Bruce*, 166 Mass. 136, 139; *Whiting* v. *Price*, 172 Mass. 240, and *Thomson* v. *Pentecost*, 206 Mass. 505, 512. We are satisfied that in its application such damages are recoverable as will make the plaintiff whole under the circumstances shown by the evidence in the particular case. *Kilgore* v. *Bruce*, 166 Mass. 136, 139. To apply properly the rule, it was necessary for the jury to be made acquainted with the conditions of sale and the situation of the parties, and to understand what the representations of the defendant were, and whether the plaintiffs had received that which he promised. If the sale had been only of the live stock, with the standing and harvested crops, the value of which was ascertained by an appraisal conceded to have been impartial, there would have been no reasonable cause for complaint. But the sale as finally consummated embraced much more than the purchase of the stock and crops. It also included, as the jury must have found by their verdict at the first trial, and as fully was brought out in evidence at the second trial, the milk route, with a lease of the defendant's farm for the term of one year. The plaintiffs' intention to buy an established and successful business which could not be carried on unless a lease of the farm could be obtained was known to the defendant, and his letter representing its value as a dairy farm, and its products, with an estimate of the profits which could be made, was the inducement which led to the completion of the purchase and the taking of the lease.

The plaintiff Thomson bought and paid for the personal property to be used with the farm, and her brother, the plaintiff Stone, by an arrangement with her was named in the lease as joint lessee. While the jury could find that they intended jointly to engage in dairy farming, the loss to her because of her investment might be greater than that suffered by him, and the damages arising from the defendant's misrepresentations of material facts could be assessed according to the pecuniary loss sustained by each plaintiff. *Baker* v. *Jewell*, 6 Mass. 461. *Medbury* v. *Watson*, 6 Met. 246, 257. *Boston & Maine Railroad* v. *Portland, Saco & Portsmouth Railroad*, 119 Mass. 498. The distinction as to the amount which each plaintiff could recover was clearly pointed out, and the jury were correctly instructed that the plaintiffs, on the assumption that the business had produced a year before a net income of $2,000, were entitled to the benefit of their bargain respectively, and whatever they lost by reason of these representations not being true they were entitled to recover as damages.

The letters which passed between the parties, the conversations between them, the lease and any statements made by the defendant to the witness Beers as to the terms of sale, or that the plaintiff Thomson was not cognizant that the farm had not been profitable, were relevant and properly admitted as bearing on the value of what the plaintiffs actually received at the time of purchase as compared with what the value would have been if the representations had been true. The testimony from qualified experts as to the value of the defendant's dairy, including the stock, the lease and the milk route for the period of one year, and stating at what sum the property must be capitalized to produce the income represented by the defendant, was admissible for the reasons given in *Thomson* v. *Pentecost*, 206 Mass. 505, 510, 511. The evidence of Beers, who occupied the farm the year before the sale, that he had lost money, is to be read in connection with his statements previously referred to, that he had frequent conversations with the defendant in which he informed him that not only was the farm unprofitable, but because of the loss entailed in its management he did not care to continue in occupation. It was a question of fact whether the farm under ordinary conditions could be made to yield a

profit of $2,000 a year, and, if under proper management it never had become remunerative, evidence that no profit had been realized was relevant as to its value.

It is unnecessary to go more at length into the questions raised by the exceptions. We find no error of law in the rulings as to evidence, or in the refusals to give the requests, or in the instructions to the jury. *Thomson* v. *Pentecost,* 206 Mass. 505.

*Exceptions overruled.*