John C. CONKLING, et al., Plaintiffs,

v.

MOSELEY, HALLGARTEN, ESTABROOK, & WEEDEN, INC., and Eliot J. Robinson, Defendants.

No. CA 82–1874–T.

United States District Court, D. Massachusetts.

Dec. 20, 1983.

Jerome Gotkin, Allen C.B. Horsley, Boston, Mass., for plaintiffs.

James Heigham, Choate, Hall & Stewart, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

This is a securities action brought by dissatisfied customers against the stock-

brokerage house of Moseley, Hallgarten, Estabrook & Weeden, Inc. and one of its registered representatives, Eliot J. Robinson. The complaint essentially is based on allegations that the defendants overtraded or "churned" plaintiffs' accounts and that they recommended securities unsuitable for plaintiffs' investment objectives. At issue now is plaintiffs' motion for reconsideration of this court's order allowing defendant's motion to dismiss count IX of the complaint.

In count IX, plaintiffs claim that defendants' actions violated Chapter 93A of the Massachusetts General Laws.[1] Relying on this court's opinion in *Palace v. Merrill Lynch, Pierce, Fenner & Smith*, No. 80–1831–T (D.Mass. Aug. 3, 1981), defendants moved to dismiss count IX. That motion was allowed on November 1, 1983, and plaintiffs now seek reconsideration.

*Palace* held that Chapter 93A § 2(a) does not apply to securities transactions. In reaching that conclusion, this court relied on an explicit legislative statement that, in construing Chapter 93A § 2(a), courts are to be guided by the interpretation given to section 5(a)(1) of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45(a)(1) (1973).[2] Noting that section 5(a)(1) of the FTCA had never been applied to securities transactions, this court concluded in *Palace* that the Massachusetts legislature had, by implication, excluded securities transactions from the coverage of Chapter 93A. *Palace*, slip op. at 3.

In their motion for reconsideration, plaintiffs contend that subsequent decisions by the Supreme Judicial Court, applying Chapter 93A to transactions not regulated by the FTCA, have undercut the premise of this court's decision in *Palace*. *See, e.g., Raymer v. Bay State National Bank*, 384

Mass. 310, ——, 424 N.E.2d 515, 521 (1981) (applying Chapter 93A to the banking industry); *Dodd v. Commercial Union Insurance Co.*, 373 Mass. 72, 79 n. 6, 365 N.E.2d 802, 806 n. 6 (1977) (applying Chapter 93A to the insurance industry). Plaintiffs reason that since the Supreme Judicial Court has applied 93A when the FTCA does not apply, it would also do so in cases involving securities transactions. They argue, therefore, that defendants' motion to dismiss count IX should not have been allowed.

This court, however, is not persuaded by plaintiffs' argument. *Dodd* and *Raymer* applied Chapter 93A to insurance and banking, areas in which the states have long played a primary role in regulation. Plaintiffs' proffered application of Chapter 93A to securities transactions presents a very different question. At least since 1933, federal law has largely superseded state regulation of securities transactions. *See, e.g., Edgar v. MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) (holding Illinois takeover statute invalid as conflicting with the commerce clause). This distinction causes the court to conclude that, if faced with the precise question, the Supreme Judicial Court would not extend the coverage of Chapter 93A to securities transactions. Indeed, the Supreme Judicial Court's opinion in *Dodd* forecasts such a result:

> [Defendant] argues that, despite the expansion [sic] scope of c. 93A, it excludes insurance transactions from coverage, because insurance transactions are not included in § 5(a)(1) of the Federal Trade Commission Act ... which is a guide to interpretation of § 2(a).... However, FTCA § 5(a)(1) does not cover Massachusetts insurance practices *because* these practices are subject to Mas-

---

**1.** In pertinent part Chapter 93A states:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Mass.Gen.Laws Ann. ch. 93A § 2(a) (1972)

**2.** Chapter 93A provides:

It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act ....

Mass.Gen.Laws Ann. ch. 93A § 2(b) (1983 supp.).

sachusetts regulation. 15 U.S.C. § 1012(b) (1970).... Hence, we do not read c. 93A, § 2(b), as evidencing a legislative intent to create an implies [sic] exception to c. 93A coverage.

*Dodd,* 373 Mass. at 79 n. 6, 365 N.E.2d at 806 n. 6 (citations omitted). In effect, the Supreme Judicial Court decided to apply Chapter 93A to insurance transactions because the federal government has specifically left the regulation of the insurance industry to the states.[3]

*Raymer*'s construction of Chapter 93A is completely consistent with the reasoning in both *Dodd* and *Palace.* In *Raymer,* the Supreme Judicial Court applied Chapter 93A to banking, another area that largely has been left to state regulation. For example, Massachusetts has an extensive statutory framework governing the organization and operation of banks. *See, e.g.,* Mass.Gen.Laws Ann. ch. 167 (1983 supp.). Massachusetts also regulates the relationship between banks and their customers. *See, e.g.,* Mass.Gen.Laws Ann. ch. 106 §§ 4–101—4–504 (1970) (U.C.C. article 4). Moreover, many of the federal regulations in the banking area recognize the importance of state law. *See, e.g.,* 15 U.S.C. § 1610(b) (1982) (allowing states to regulate consumer credit charges); 15 U.S.C. § 1692n (1982) (providing that the Fair Debt Collection Practices Act preempts state law only when the state law is inconsistent with the federal law in the sense that it provides less consumer protection).

Although the reasoning in *Raymer* is less explicit, both *Raymer* and *Dodd* stand

only for the proposition that Chapter 93A applies to industries exempt from the FTCA, when such industries are primarily subject to state regulation. *Cf. Morse v. Mutual Federal Savings & Loan Ass'n of Whitman,* 536 F.Supp. 1271, 1281 (D.Mass. 1982) (holding that federal statute regulating savings and loan associations does not preempt triple damages provision of Chapter 93A).

It is clear that securities transactions traditionally have been subject to federal control. Section 28(a) of the Securities and Exchange Act of 1934 contains a provision that explicitly preempts conflicting state securities laws. 15 U.S.C. § 78bb (1981). As recently as last Term, the United States Supreme Court held that a state law regulating securities transactions was unconstitutional under the commerce clause.[4] *See Edgar v. MITE Corp.,* 457 U.S. 624, 102 S.Ct. 2629, 2640—43, 73 L.Ed.2d 269 (1982). In so holding the Court noted that the state regulation engendered a burden on commerce that was excessive when compared to the local interest in regulating the securities transactions in question. *Id.* 102 S.Ct. at 2641.

The issue presented here is, therefore, substantively distinguishable from those present in *Dodd* and *Raymer.* Having that distinction in mind, as well as the clear policy of federal control in the regulation of securities transactions, this court concludes that the Supreme Judicial Court would hold that Chapter 93A is not available as an avenue of relief for the plaintiffs

---

**3.** There is a federal statute which explicitly leaves the regulation of insurance to the states: No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance ....

15 U.S.C. § 1012(b) (1976) (McCarran-Ferguson Act).

**4.** At least one Justice also felt that the state statute in question was preempted by the preemption language in the Securities and Exchange Act of 1934, 15 U.S.C. § 78bb. *Edgar v. MITE Corp.,* 102 S.Ct. at 2635 (White, J.). Jus-

tice White's reasoning on the preemption issue is instructive on the degree of federal control in the securities area. He indicated that the state law would be preempted even in the absence of an actual conflict between state and federal law. *Id.* at 2635–2639. A situation of actual conflict exists, of course, where it is impossible to comply with both federal and state law. *Id.* at 2635.

By contrast, many statutes provide that, in situations where there is no actual conflict between state and federal banking law, the state law is not preempted. *See, e.g.,* 15 U.S.C. § 1692n (state law not preempted if it provides more protection to the consumer than federal law); 12 U.S.C. § 2616 (1980) (same).

in this case. The plaintiffs' motion for reconsideration is, therefore, denied.

An order will ISSUE.