Sumner M. REDSTONE, et al., Plaintiffs,

v.

GOLDMAN, SACHS & CO., et al., Defendants.

Civ. A. No. 83–414–S.

United States District Court, D. Massachusetts.

Jan. 5, 1984.

Barry Ravech, Winer & Abrams, Boston, Mass., for plaintiffs.

Peter M. Saparoff, Gaston Snow & Ely Bartlett, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

This is an action for securities fraud and conversion. The defendant has moved to dismiss and to strike counts of the complaint. The motion is allowed in part and denied in part as set out below.

The plaintiffs, the Redstones, are investors who wished to invest some five million dollars in municipal securities in the summer of 1982. The Redstones sought the assistance of Herbert Cobey, a securities broker-dealer with the investment banking firm Goldman, Sachs & Co. ("Goldman"). According to the plaintiffs, Cobey held himself and his firm out as experts in the field of investment counseling, and led the plaintiffs to rely on their expertise. The plaintiffs allege that Cobey went to some lengths to establish a fiduciary relationship with them. From July, 1982 through October, 1982, Cobey acted as broker-dealer for the plaintiffs and purchased securities on their behalf.

The plaintiffs complain of two wrongs. First, they allege that Cobey fraudulently breached his duty to them by not disclosing his intention to steer their funds into securities for which Goldman was acting as underwriter or dealer. During the period in which Cobey was advising the plaintiffs, interest rates were falling, and the plaintiffs allege, in effect, that Cobey failed to invest their money promptly in higher yield securities because he was waiting to put it into securities that Goldman was marketing. As a result of Cobey's delay in investing their funds, the plaintiffs allege that they ended up with a less valuable, lower yield portfolio. The plaintiffs allege in addition that Cobey made an unauthorized purchase of bonds of the City of Malden and wrongfully charged their account for the loss on disposition of the securities.

The plaintiffs bring their action under several different theories. Wrongful steering of the plaintiff's investment is alleged to create liability under the 1934 Securities Exchange Act and the regulations promulgated pursuant to it, and in addition, to create liability under the Massachusetts law of negligence, contract, fiduciary duty and unfair business practices (M.G.L. c. 93A). Relief is sought under the same Massachusetts law theories for the unauthorized purchase of the Malden bonds. In addition, the plaintiffs seek relief for both wrongs as violations of Rule G–19 of the Municipal Securities Rulemaking Board ("MSRB").

The defendants have moved (1) that all the counts of the complaint arising out of the alleged wrongful selection of investment be dismissed for failure to state a claim for which relief can be granted: (2) that the MSRB and Chapter 93A claims be dismissed for failure to state a claim for which relief can be granted; (3) that all claims against the individual defendants be dismissed (the plaintiff has named all of the partners and some of the limited partners of Goldman as well as the partnership itself); (4) that the plaintiff's request for exemplary damages in ¶ 39(c) of the complaint be stricken "for legal insufficiency"; (5) that the defendants be awarded their costs, expenses and attorney's fees.

Both parties have assumed for the purposes of this motion that the Exchange Act will support a private action for the kind of nondisclosure alleged here.

The principal attack brought by the defendants on the plaintiffs' claim of wrongful steering goes to the issue of damages. The defendants argue that since the plaintiffs' portfolio has appreciated in the months since the purchases were made the plaintiffs suffered no compensable loss as a result of the defendants' conduct.

The defendants rely initially on the language of 15 U.S.C. § 78bb(a), which restricts damages awarded under the Exchange Act to "actual damages". The defendants argue that this language implies a rigid limit of damage awards to out-of-pocket losses. The Second Circuit has, in a thorough opinion, examined the meaning of the "actual damage" concept. *Osofsky v. Zipf,* 645 F.2d 107 (1981). The court ruled that the word "actual" was meant to prohibit punitive damages, and to prevent dou-

ble recovery by those who assert both state and federal claims arising out of the same conduct. *Osofsky, supra* at 111. Citing *Birdsall v. Coolidge*, 93 U.S. 64, 23 L.Ed. 802 (1876), the Court reasoned that the term "actual damages" had an accepted meaning at the time of the enactment of the Exchange Act (1934). Actual damages meant compensatory damages measured by economic loss. *Osofsky, supra* at 111. "[T]here cannot be any one rule of damages which will apply in all cases, even where it is conceded that the finding must be limited to actual damages". *Id.*, quoting *Birdsall, supra* at 70. "It is for the district judge, after becoming aware of the nature of the case, to determine the appropriate measure of damages in the first instance." *Arrington v. Merrill Lynch, Pierce, Fenner & Smith*, 651 F.2d 615, 620–621 (9th Cir.1981).

The defendants argue that our Court of Appeals has specified the measure of damages in cases where a purchaser of securities has been defrauded. *Janigan v. Taylor*, 344 F.2d 781 (1st Cir.1965), *cert. denied* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965) involved a group of stockholders who proved that the defendant had fraudulently induced them to sell their interest in a company to him. Judge Aldrich stated that in the case of a defrauded buyer, damages are to be reckoned "solely by the difference between the real value of the property at the date of its sale to the plaintiffs and the price paid for it, with interest from that date, and, in addition, such outlays as were legitimately attributable to the defendant's conduct, but not damages covering 'the expected fruits of an unrealized speculation.'" *Id.* at 786 (citing *Sigafus v. Porter*, 179 U.S. 116, 21 S.Ct. 34, 45 L.Ed. 113 (1900))

I do not read Judge Aldrich's comment as requiring the denial of recovery on the facts of this case. The plaintiffs allege that they instructed Cobey to purchase a very specific class of securities, AA-grade municipal bonds. These bonds had a known yield. The defendants failed to make these purchases, and ultimately purchased lower yield securities in furtherance of their marketing purposes. The plaintiffs are therefore seeking realization of their reasonably certain expectations rather than "the expected fruits of an unrealized speculation".

The case law in other circuits is consistent with this reading of *Janigan*. *Garnatz v. Stifel, Nicolaus & Co.*, 559 F.2d 1357, 1360 (8th Cir.) *cert. den.* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978) (out-of-pocket rule not a talisman); *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 781 (3rd Cir.1976) (recovery for lost possible profits to be allowed under Exchange Act unless the loss is wholly speculative); *Madigan, Inc. v. Goodman*, 498 F.2d 233, 239–240 (7th Cir.1974) (recovery for lost alternative investments to be allowed if proved with "a good deal of certainty").

I conclude that the plaintiffs may recover under § 10(b) of the Exchange Act and the regulations promulgated thereunder for their losses resulting from the defendants' wrongful steering.

■ The defendants also suggest that the plaintiffs cannot recover for their lost profits resulting from the defendants' wrongful steering under Massachusetts contract law. Massachusetts contract law allows plaintiffs to recover the benefit of their bargain, including lost profits. *Rombola v. Cosindas*, 351 Mass. 382, 385, 220 N.E.2d 919 (1966). *See also Coyne Industrial Laundry v. Gould*, 359 Mass. 269, 277, 268 N.E.2d 848 (1971); *Air Technology Corporation v. General Electric Corporation*, 347 Mass. 613, 626–627, 199 N.E.2d 538 (1964); *Abrams v. Reynolds Metals Co.*, 340 Mass. 704, 709, 166 N.E.2d 204 (1960); *Cetrone v. Livoli*, 337 Mass. 607, 610, 150 N.E.2d 732 (1958); *Whiting v. Price*, 172 Mass. 240, 242–243, 51 N.E. 1084 (1898); *Coffing v. Dodge*, 167 Mass. 231, 236–237, 45 N.E. 928 (1897).

■ Massachusetts law is equally clear that in an action for wilful misrepresentation the plaintiff may recover the "benefit of the bargain" if the damages are provable with reasonable certainty. *Rice*

*v. Price,* 340 Mass. 502, 510, 164 N.E.2d 891 (1960). On the other hand, "benefit of the bargain" damages are not available in a case of negligent misrepresentation. *Danca v. Taunton Savings Bank,* 385 Mass. 1, 10–11, 429 N.E.2d 1129 (1982). Accordingly, I hold that the plaintiffs have not stated a valid claim for relief under their negligence count, Count IV, but that they have stated a claim under Count III, the fiduciary duty count, insofar as they allege a wilful breach of duty with respect to the selection of securities.

■ Plaintiffs assert that the defendants are liable to them under Rules G–17 and G–19 of the MSRB for both wilful misinvestment of their funds and unauthorized purchase of the Malden bonds. These rules prohibit members from making "unsuitable" investments. Whether a private right of action lies depends upon the intent of Congress in enacting the legislation creating the MSRB. *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 377, 102 S.Ct. 1825, 1838, 72 L.Ed.2d 182 (1982); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 23–24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–576, 99 S.Ct. 2479, 2488–2489, 61 L.Ed.2d 82 (1979).

Similar rules of the New York Stock Exchange and of the National Association of Securities Dealers have been held not to create private rights of action. *Colonial Realty Corporation v. Bache & Co.,* 358 F.2d 178, 181 (2nd Cir.1966); *Plunkett v. Dominick & Dominick, Inc.,* 414 F.Supp. 885, 889 (D.Conn.1976). The reasoning of those cases applies with equal force to this one. Nothing in the legislative history of P.L. 94–29 leads to a contrary rule. S.Rep. No. 75, 94th Congress 1st Session, reprinted in 1975 U.S.Code Congressional Administrative News at 179.

Accordingly, I find that there is no private right of action for a violation of Rules G–17 and G–19 of the MSRB.

■ In *Mitchelson v. Aviation Simulation Technology, et al.,* 582 F.Supp. 1 (D.Mass.1983), I adopted Judge Mazzone's careful reasoning in *Kennedy, et al., v. Josephthal & Co., Inc.,* No. 82–913–MA (D.Mass., June 29, 1982). Judge Mazzone found, after examination of the trends in Massachusetts law, that chapter 93A does apply to securities transactions. *Cf. Sullivan v. Dean Witter Reynolds, Inc. et al.,* No. 82–3300–K (D.Mass., June 9, 1983) (applying chapter 93A to commodities transactions). Notwithstanding the reservations which I expressed in *Mitchelson,* I hold that chapter 93A does apply to the transactions involved in this case.

I have no doubt that lost profits resulting from the defendants' wrongful steering are properly recoverable under chapter 93A, given the broadly remedial purpose of that statute.

Punitive damages may not be awarded for violations of the Exchange Act, 15 U.S.C. § 78bb(a), and under Massachusetts law, "exemplary damages are not allowed unless authorized by statute." *Lowell v. Massachusetts Bonding & Insurance Co.,* 313 Mass. 257, 269, 47 N.E.2d 265 (1943). *See also, Caperci v. Huntoon,* 397 F.2d 799, 801 n. 2 (1st Cir.), *cert. den.,* 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968); *Schiller v. Strangis,* 540 F.Supp. 605, 624 (D.Mass.1982). A motion to strike does not lie except as specified in Fed.R.Civ.P. 12(g) and accordingly must be denied in this case.

The defendant's motion to dismiss and to strike is DENIED in part and ALLOWED in part as follows. The motion to dismiss claims asserted with respect to the wrongful steering alleged in paragraph 12 and repeated in Counts I and III through VII of the complaint is DENIED as to Counts I, III, V, VI, VII, but ALLOWED as to Count IV. The motion to dismiss Count VI alleging violations of the rules of the Municipal Securities Rulemaking Board is ALLOWED. The motion to dismiss Count VII of the complaint, brought under Massachusetts General Laws, chapter 93A is DENIED. Pursuant to the stipulations en-

tered by counsel at the hearing on the present motion, the motion to dismiss all claims against the individual defendants is ALLOWED. The motion to strike the request for exemplary damages in paragraph 39(c) of the complaint is DENIED. The defendants' request for attorneys' fees and costs is DENIED as clearly premature.